512 P.2d 857

**Wanda Jean BROWNING, Appellant,**

v.

**LEVY'S OF TUCSON, Appellee.**

**No. 2 CA–CIV 1360.**

Court of Appeals of Arizona,
Division 2.

July 16, 1973.

Rehearing Denied Aug. 21, 1973.

Review Denied Oct. 2, 1973.

Mary Anne Peters, Tucson, for appellant.

Bilby, Thompson, Shoenhair & Warnock, P. C. by Richard M. Bilby and T. Scott Higgins, Tucson, for appellee.

HATHAWAY, Chief Judge.

This appeal questions the propriety of a summary judgment in favor of plaintiff-appellee.

The issues presented to the trial court arose from a revolving charge account agreement entered into between the parties on April 4, 1970. On November 23, 1970, appellee filed a complaint in debt for charges on the revolving charge account against appellant and her husband; defendants filed counterclaims alleging that plaintiff had violated the federal Truth in Lending Act [15 U.S.C.A. § 1640]; that the plaintiff had charged a usurious rate of interest [A.R.S. § 44–1202]; and that the agreement was in violation of the Retail Installment Sales Transactions Act, A. R.S. § 44–6001, et seq. Both parties to this appeal filed motions for summary judgment, appellee on the counterclaim and appellant on the complaint. The trial judge granted appellee's motion for summary

judgment on the counterclaim and dismissed appellee's complaint with prejudice.[1] During the course of the proceedings, husband and wife were divorced and the husband filed bankruptcy proceedings upon which the debt to appellee was discharged or paid. Only the wife has appealed from the summary judgment. On appeal appellee maintains that appellant is without standing since appellee is no longer asserting the debt against appellant.

The charge account agreement in question operates for an indefinite period of time, allows the customer to make new purchases on one account, and provides for monthly billing and imposition of the finance charge on the beginning balance of each new billing period without taking into consideration credits or debits subsequent to the beginning balance. Under the agreement, the customer has the privilege of paying the cash price of the purchase on his account without paying any finance charges until the second billing date following the purchase. If not paid by that time he is charged interest of one and one half percent monthly on the beginning balance. Each month the customer is required to pay a minimum amount, dependent on the unpaid balance as set forth in the charge account agreement. Purchases made during the current billing period, if unpaid as of the next billing date, are merged into the account to derive the new unpaid balance for the succeeding period. That the one and one half percent per month exceeds the ten percent allowable interest rate per annum under A.R.S. § 44–1202[2] is without dispute.

■ We will not discuss appellant's contention with respect to the alleged exaction of a usurious rate of interest for the reason that the question has become moot since appellee's complaint has been dismissed with prejudice and the debt is no longer collectible.

DID THE REVOLVING CHARGE ACCOUNT AGREEMENT VIOLATE THE PROVISIONS OF THE "FEDERAL TRUTH IN LENDING ACT?"

■ Appellant argues that appellee has failed to disclose certain finance charges in violation of the Truth in Lending Act, 15 U.S.C.A. § 1637, and therefore she is entitled to affirmative relief pursuant to 15 U.S.C.A. § 1640.[3]

She claims a violation of the disclosure requirements since prior to the "revolving charge account agreement," the parties had entered into a 30-day account with no finance charge. The prior 30-day account balance was attributed to the new account and finance charges were imposed thereon. Specifically, appellant argues that appellee

---

1. It is not clear on the record why the complaint was dismissed, however, suffice it to say that the complaint is no longer being pursued since it was clearly dismissed with prejudice in the trial court and no appeal has been taken therefrom.

2. § 44–1202. Usury prohibited; forfeiture of all interest upon obligation involving interest exceeding ten per cent

No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater value for the loan or forbearance of any money, goods, or things in action, than ten dollars on one hundred dollars for one year. Any person, contracting for, reserving or receiving, directly or indirectly, any greater sum or value, shall forfeit all interest. As amended Laws 1969, Ch. 79, § 4.

3. § 1640. Civil liability—Failure to disclose.

(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of

(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

failed to disclose that finance charges would be imposed upon this previous 30-day account balance, and consequently appellee violated § 1637(a) of the federal Truth in Lending Act which requires that all disclosures regarding how the account will be handled take place before the first transaction. We cannot agree with appellant's reasoning for the following reasons. The Truth in Lending Act provides that "before opening an account under an open end consumer credit plan, the creditor shall disclose to the person to whom credit is to be extended each of the following items, to the extent applicable:

1. The conditions under which a finance charge may be imposed, including the time period, if any, within which any credit extended may be repaid without incurring a finance charge.

2. The method of determining the balance upon which a finance charge will be imposed.

3. The method of determining the amount of the finance charge, including any minimum or fixed amount imposed as a finance charge. "15 U.S.C.A. § 1637(a), (1)(2)(3)."

Appellant admits that she was aware that there was an outstanding balance in the 30-day charge account at the time the revolving charge agreement was entered into and that it would not be paid within the required time period. This admission coupled with the following signed revolving charge agreement nullifies appellant's argument:

"I also have the privilege of paying in monthly installment [said monthly installments to be in the amount required by Levy's Flexible Account terms generally in effect at the time of each monthly statement] in which case *I agree to pay the time price of purchases now or hereafter charged to my account,* which price is the monthly unpaid balance of the cash price thereof and of any overdue time price differential (hereinafter called 'Finance Charge' in accordance with Levy's Flexible Account terms generally in effect at the time of purchase, so long as any part of my balance remains unpaid." (Emphasis added)

Appellant next argues that appellee failed to clearly inform her of the time period within which any credit extended might be repaid without incurring a finance charge as required by § 1637(a)(1). The revolving charge agreement explained the time period within which any credit extended might be repaid without incurring a finance charge as follows:

". . . if a bill shows a 'previous balance', i. e., the balance owing at the start of the period covered by that bill, any *finance charge* on that bill will be based on that balance, if payments and credits shown on that bill offset that balance, no *finance charge* will appear on that bill. If a bill shows a 'new balance' i. e., the balance owing at the end of the period covered by that bill, and if you pay that before the end of the billing period in which we send you that bill, no *finance charge* will appear on the next period thereafter sent to you on this account."

Appellant points out that the word "offset" is not clear, and therefore the disclosure requirements have not been complied with. Webster's Third New International Dictionary (Unabridged 1964) when specifically referring to an account, defines "offset" as follows: "Either of two *equivalent* items on two sides of an account." We have reviewed the foregoing part of the agreement and find that as a matter of law, it is clear as to its meaning.

Appellant further claims that appellee violated the Act when it failed to disclose that it based its periodic 1½% interest rate on the beginning balance of each new billing period without discounting credits and debits. A further violation of the Act is claimed because the quoted 18% annual interest rate may be higher in some instances where there have been payments subsequent to the beginning balance. We have reviewed the agreement and have found that it stated the "charges" would be based on the beginning balance without

taking subsequent debits or credits into consideration.[4]

The Truth in Lending Act in 15 U.S.C.A. § 1606 provides that the annual percentage rate applicable to any extension of credit shall be determined, in accordance with the regulations of the Federal Reserve Board:

"(2) in the case of any extension of credit under an open end credit plan, as the quotient (expressed as a percentage) of the total finance charge for the period to which it relates divided by the amount upon which the finance charge for that period is based, multiplied by the number of such periods in a year." 15 U.S.C.A. § 1606(a)(2).

The regulations of the Federal Reserve Board in conforming with § 1606 of the Act provide that where a fixed percentage rate on a period basis is imposed, the *annual percentage* rate will be figured by multiplying the periodic rate (1½% in this case) by the number of billing cycles in a year, (12 in this case). Reg. Sec. 226.7(4). Appellee properly complied with the regulations since it imposed a 1½% rate per month for 12 months and arrived at the disclosed 18% figure. The Act requires no more than this in figuring the annual percentage rate.

## WAS THERE A VIOLATION OF THE ARIZONA RETAIL INSTALLMENTS SALES TRANSACTIONS ACT?

█ The Arizona Retail Installments Sales Transactions Act places a ceiling on time-price differential charges. Our consideration of this Act will only deal with its retroactivity since the agreement before us was entered into prior to its enactment, specifically October 1, 1971. The enabling legislation for this Act, Laws 1971, Chapter 170 Section 2, provides:

"A. The provisions of this act shall become effective on October 1, 1971.

B. This act does not invalidate any retail installment contract, retail charge account agreement or any agreement providing for a time price differential or other charge entered into prior to the effective date of this act. The seller or holder, in accordance with such agreement or contract, may charge, collect and receive or *may have charged, collected and received any time price differential or differentials and other charges agreed between the parties* provided:

1. That § 44-6003, Arizona Revised Statutes, governs the time price differential or delinquency charge to be charged, collected and received on or after the effective date of subsection A under any retail charge account agreement, whether entered into before or after such date, and

2. That § 44-6002, Arizona Revised Statutes, governs the time price differential to be charged, collected and received with respect to any other retail installment transaction entered into on or after the effective date of this act." (Emphasis added)

The above explains that the agreement between the parties is valid since the agreement was entered into prior to the effective date of the legislation. The Act merely reduces the amount of service charge which could be imposed to the level allowed by A.R.S. § 44-6001 et seq., however, this need not concern us since the appellee's complaint has been dismissed.

We have carefully reviewed appellant's remaining arguments and find them without merit.

Affirmed.

KRUCKER and HOWARD, JJ.

---

4. It should be pointed out that the Truth in Lending Act does not specify the charges, interest rates, or the manner in which charges may be assessed but merely provides that these charges should be disclosed in a specific way.